UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE APPLICATIONS
FOR SEARCH WARRANTS

**Filed Under Seal**

3:24-mj-18 RMS

**AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS**

I, Michael Manganiello, being duly sworn, depose and state as follows:

**BACKGROUND OF AFFIANT**

1.       I am a Special Agent with the Department of Homeland Security ("DHS"),
Homeland Security Investigations ("HSI"), assigned to the Resident Agent in Charge New Haven
Field Office in the District of Connecticut.  I have been so employed since June of 2009.  I am also
a HSI certified Computer Forensic Examiner.  I investigate criminal violations related to child
exploitation and child pornography, including but not limited to the illegal production, distribution,
receipt, and possession of child pornography, the online enticement of minors, and the traveling in
interstate and foreign commerce to engage in sexual activity with minors, in violation of 18 U.S.C.
§§ 2251, 2252(a), 2252A, 2422(b) and 2423(a).

2.       I received Criminal Investigator Training at the DHS Federal Law Enforcement
Training Center in Brunswick, Georgia and HSI Special Agent Training at the Immigration and
Customs Enforcement ("ICE") Academy in Brunswick, Georgia. I have also received Basic
Evidence Recovery Training at the HSI Cyber Crimes Center in Fairfax, Virginia.  These trainings
involved electronic law and evidence, the seizure of computers and smartphones, basic digital
forensics processing, and the investigative uses of data. I have received training in the area of child
pornography and child exploitation and have had the opportunity to observe and review examples
of child pornography (as defined in 18 U.S.C. § 2256).  I have also participated in training

programs for the investigation and enforcement of federal child pornography laws relating to the use of computers for receiving, transmitting, and storing child pornography.

3.       I am currently in investigating RICK MARRO (the "TARGET"), an adult male born in April 1981, who at the time of the offense conduct under investigation resided in Stamford, Connecticut, for the following offenses: 18 U.S.C. §§ 2251(a) (production of child pornography, 2252A(a)(2) (receipt and distribution of child pornography), 2252A(a)(5)(B) (possessing and accessing with intent to view child pornography), and 2422(b) (online enticement of a minor to engage in illegal sexual activity) (collectively, the "TARGET OFFENSES").

4.       I make this affidavit in support of applications for search warrants to search the following items (the "CELL PHONE EXTRACTIONS") containing data that the Stamford Police department extracted the TARGET's Samsung Galaxy S22 Ultra phone bearing serial number R5CT40T9YVX (the "TARGET'S PHONE") pursuant to a state search warrant:

          a.       copies of a Magnet Axion Portable Case, a Cellebrite Universal Forensic Extraction Device Report, and a Cellebrite PDF report that are located on one external hard drive, bearing serial number 22321N401025, as more fully described in Attachment A-1 ("DRIVE-1"), which the Stamford Police Department provided to me on or about December 6, 2023, and is presently in the custody of HSI in New Haven, CT; and

          b.       a copy of a Graykey extraction that is located on one external hard drive, bearing serial number 22321N401370, as more fully described in Attachment A-2 ("DRIVE-2"), which the Stamford Police Department provided to me on or about December 12, 2023, and is presently in the custody of HSI in New Haven, CT, and which contains a full file system extraction from the TARGET'S PHONE.

5.      Based on the information set forth in this affidavit, I believe there is probable cause to believe that the CELL PHONE EXTRACTIONS constitute and contain items that constitute evidence, fruits, and instrumentalities of TARGET OFFENSES, as further described in Attachment B.

6.      The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement, my own investigation to include personal observations, documents and other investigative materials which I have reviewed, as well my training and experience as a Special Agent and Computer Forensic Agent with HSI.   Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause that evidence of the TARGET OFFENSES will be found on the CELL PHONE EXTRACTIONS.

## TARGET OFFENSES

7.      As noted above, this investigation concerns alleged violations of the following offenses:

a.      18 U.S.C. § 2251(a) provides, "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be [guilty of a crime], if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer,

or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed."

      b.    18 U.S.C. § 2252A(a)(2) provides, "Any person who . . . knowingly receives or distributes . . . any child pornography using any means or facility of interstate or foreign commerce or that has been . . . transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall [be guilty of a crime]."

      c.    18 U.S.C. § 2252A(a)(5)(B) provides, "Any person who . . . knowingly possesses, or knowingly accesses with intent to view, . . . material that contains an image of child pornography that has been . . . transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall [be guilty of a crime]."

      d.    18 U.S.C. § 2422(b) "Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be [guilty of a crime]." The term "any sexual activity for which any person can be charged with a criminal offense" includes the production of child pornography. *See* 18 U.S.C. § 2427.

## DEFINITIONS

8.      The following definitions apply to this Affidavit:

a.      "Minor," as used herein, is defined by 18 U.S.C. § 2256(1) to mean any person under the age of eighteen years.

b.      "Child Pornography," as used herein, is defined by 18 U.S.C. § 2256(8) to mean any visual depiction including any photograph, film, video, picture, or computer or computer generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), and also includes any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct.

c.      "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. 18 U.S.C. § 2256(5).

d.      "Sexually explicit conduct" means actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person. 18 U.S.C. § 2256(2)(A).

## FACTS SUPPORTING PROBABLE CAUSE

### Initial Allegations

9.      On or about August 11, 2023, police officers with the Stamford Police Department ("SPD") received information from an attorney for the family of a 16-year-old boy ("Minor Victim or "MV"), who was born in September 2006 and whose identity is known to me. The attorney indicated that MV may have been sexually exploited by an adult named Rick. The attorney indicated that MV met Rick on a mobile social media application known as Sniffies.com. Sniffies.com is an interactive, map-based meetup application for gay, bisexual, and bicurious males.

10.     On or about August 15, 2023, SPD officers interviewed MV in the presence of his father and their attorney. MV stated that he met an individual named "Rick" on a dating website called "Sniffies." They switched from communicating on Sniffies to Snapchat[1] on April 19, 2023. MV stated that he met Rick in person approximately five to seven times. MV stated that two of the encounters were sexual in nature.

11.     MV stated that Rick drives a black Kia and provided the name of a street in Stamford, Connecticut where he believes Rick resides.

12.     Prior to the interview, MV's lawyer provided SPD officers with a picture of Rick's Snapchat account, which is "yuppme2020," along with a self-portrait photo of Rick that Rick had sent to MV.

13.     According to information provided by SPD, that same day, SPD officers went to the street that MV identified and observed a black KIA registered to the TARGET in the driveway of a residence, whose address is known to me, on that street (the "TARGET'S RESIDENCE").

---

[1] Snapchat is a mobile social media communication application owned by Snap Inc. that provides users a way to share photos, videos, and chats with other users.

<u>MV's Forensic Interview</u>

14.    On or about August 22, 2023, MV was forensically interviewed. The interview was video recorded. Some of the information that MV reported during interview included the following:

a.    MV consented to be interviewed to speak about how MV was "groomed" by "Rick" and how MV sent sexually explicit images and videos of underage children to Rick. MV wanted to prevent others into being groomed by "Rick."  MV stated that "Rick" expressed interest in both of MV's younger siblings.

b.    MV stated that "Rick" initially contacted MV on sniffies.com. "Rick" friended MV on Snapchat on or about April 19, 2023.  MV does not know "Rick's" last name. They communicated through Snapchat for approximately ten days before the first "hookup."

c.    MV sent pictures and videos of himself to "Rick."  MV and "Rick" met at "Rick's" house, and MV had sex with "Rick."  "Rick" gave MV poppers[2] at their first hookup.

d.    MV asked "Rick" if MV was the youngest person he had sex with, and "Rick" replied "no."  MV asked "Rick" what was the youngest he had been with, and "Rick" answered "12 or 13."

e.    "Rick" was into "Breath play and asphyxiation" and asked if MV would be into that.  MV stated "Rick" strangled MV, and MV passed out.  MV did not know for how long. "Rick" told MV that MV was passed out for a minute or two.  That kind of "scared" MV, and Rick did it several other times.

---

[2] Based on my review of publicly available information, popper is a slang term given broadly to recreational drugs of the chemical class called alkyl nitrites that are inhaled.  Popper use has a relaxation effect on involuntary smooth muscles, such as those in the throat and anus.   It is used for practical purposes to facilitate anal sex by increasing blood flow and relaxing sphincter muscles.  The drug is also used for recreational drug purposes, typically for the "high" or "rush" that the drug can create, and to enhance sexual pleasure in general.

   f.  MV has video of them doing "stuff" as well.  MV stated "I have asphyxiation on video."

   g.  "Rick" had MV search Reddit to contact people and told MV to send MV's pictures to others in exchange for "child porn."  "Rick" had MV store the child pornography on an app called "Mega" and put it on a file that MV would share between MV's account and "Rick's" Mega account. [3]  "Rick" made MV watch "this stuff" on his TV.  According to MV, the children in these videos were teenagers close to MV's age, and some of them were infants and babies.

   h.  After their "second hookup," which occurred sometime in early May, MV stopped seeing "Rick" because MV did not like watching child pornography.  MV confirmed that MV met up with "Rick" for "sex," and after the second time, MV was "disturbed" and didn't want to go back.

   i.  "Rick" had two addresses. MV provided the street of the TARGET'S RESIDENCE. MV indicated he also met up with "Rick" at another location, which he identified, in Stanford, Connecticut ("TARGET'S SECOND RESIDENCE").

   j.  "Rick" attempted to send a friend request to MV's younger sibling via Snapchat.

   k.   "Ricks" Snapchat username is "Yuppme2020."

   l.  MV stated that "Rick" shared pictures of MV to "a few of his buddies on Snap."

   m.  When the forensic interviewer asked MV how many times the asphyxiation happened, MV responded that he passed out and was not able to fully know how long he lost consciousness.  MV stated MV was passed out for "like one or two minutes" and that happened

---

[3] Mega is an online cloud-based file hosting and file sharing platform operated by Mega Ltd. in New Zealand.

once, but "Rick" did strangle MV and MV did "haze out for like ten to fifteen seconds, maybe two or three more times."

        n.     MV stated that MV has "videos" of the first hookup.  MV stated that MV believes "Rick" might have sent the videos to MV a few days after the encounter.

        o.     MV stated that Rick has a Samsung android phone.

15.     On or about August 23, 2023, MV provided consent for SPD officers to assume online presence for MV's Snapchat, sniffies.com and Mega accounts.

<u>Records from Third Parties</u>

16.     Records provided by Mega for MV's Mega account show a chat with the Mega account associated with email address justlewking@mail.com ("EMAIL ADDRESS 1"). According to the Mega records, MV's account shared 12,850 files to the Mega account associated with EMAIL ADDDRESS 1.

17.     According to records provided by Mega for the Mega account associated with justlewking@mail.com, the account was created on May 3, 2023 and was accessed by a device with model number SM-S908U1 running the Android 13 operating system from internet protocol ("IP") address 32.224.73.85 ("IP ADDRESS 1") on May 9, 2023.  According to publicly available information, Model SM-S908U1 is a Samsung Galaxy S22 Ultra Android Cell phone.  The Mega account payment detail shows a payment of $9.99 was made on May 3, 2023 linked to Google Order ID# GPA3311-8448-3566 ("MEGA PAYMENT 1").

18.     According to records provided by Snapchat, Snapchat account "yuppme2020" is associated with email address rickmarro[redacted]@gmail.com ("EMAIL ADDRESS 2").  The records indicate this account is still active and had been accessed using device Model SM-S908U1.

The records also indicate that the account had numerous conversations occurring from IP ADDRESS 1 between the dates of April 21, 2023 through May 17, 2023.

19.     According to public information, Frontier Communications is the internet service provider for IP ADDRESS 1. According to records provided by Frontier Communications on or about September 20, 2023, IP ADDRESS 1 was assigned to the TARGET from March 28, 2023 through September 20, 2023.  The service address is the TARGET'S RESIDENCE, and the contact phone number is phone number xxx-xxx-5858. ("PHONE NUMBER 1").[4]

20.     According to records provided by Google, the Google Order ID for MEGA PAYMENT 1, discussed above, is associated with a Google Account ID with billing information listed as the TARGET. The Google billing information included 12 credit cards associated with the TARGET.

21.     Google records for EMAIL ADDRESS 2 lists the subscriber as the TARGET. The recovery SMS phone number is PHONE NUMBER 1. The records show multiple login activity from IP ADDRESS 1. In addition, Google Pay customer information records list the TARGET with an address of TARGET ADDRESS 1.

22.     According to information provided by SPD, property records show that the TARGET'S SECOND RESIDENCE, which was identified by MV, is a residence owned by another individual. The residence is divided into three separate units. The SPD obtained information that Unit 3 was rented by the TARGET.

---

[4] The full number is known to me, but only the last four digits are being provided for purposes of this affidavit.

State Search Warrant and Cell Phone Extraction

23.     On or about September 29, 2023, the SPD obtained a Connecticut Superior Court search warrant to search the TARGET'S RESIDENCE and seize evidence (including computers and cell phones) of violations of the Connecticut state crime of possession of child pornography in the third degree, in violation of Connecticut General Statutes § 53a-196f, for the time period from April 19, 2023 to the date the warrant is executed. However, as noted in the state warrant application, under Connecticut state law, child pornography is defined in Connecticut General Statutes § 53a-193 as visual depictions of someone less than 16 years old engaged in sexually explicit conduct.

24.     On or about October 2, 2023, SPD members, with the assistance from HSI, executed the state search warrant at the TARGET'S RESIDENCE. The TARGET was present during the search. Officers seized, among other things, the TARGET'S PHONE, which is a Samsung Galaxy S22 Ultra phone, from the TARGET's bedroom. The state warrant authorized any seized electronic evidence to be forensically examined. I was present and assisted SPD during the execution of the search warrant at the TARGET'S RESIDENCE.

25.     On or about October 20, 2023, a member of the SPD Digital Forensics Unit ("DFU") obtained a full file system extraction from the TARGET'S PHONE and copied the extraction to a thumb drive, referred to above as the Graykey extraction. A copy of this extraction is contained on DRIVE-2, as more fully described in Attachment A-2.

26.     The DFU member then loaded the extracted data into two forensic programs, Magnet Axiom and Cellebrite, and created a Cellebrite Universal Forensic Extraction Device Report ("UFDR") report and a Magnet Portable Case so that officers could review the data that was on the phone. The data from the SIM card in the phone was separately extracted using

Cellebrite, and a Cellebrite PDF report was created for the SIM card data. The date range of the

data in the Magnet and Cellebrite reports was limited from April 19, 2023 to October 2, 2023, as

specified in the state search warrant. A copy of the Magnet and Cellebrite reports is contained on

DRIVE-1, as more fully described in Attachment A-1.

27.     The TARGET'S PHONE is a model SM-S908U1 phone, bearing serial number

R5CT40T9YVX, which is the same model device that Mega and Snapchat reported was used to

access the Mega and Snapchat accounts discussed above. The phone number assigned to the phone

was PHONE NUMBER 1.

28.     To date, the TARGET has not sought the return of the TARGET'S PHONE.

<u>Additional Records from Third Parties</u>

29.     After the state search warrant was executed, I obtained additional records from third

party providers.

30.     Records provided by T-Mobile on October 5, 2023, indicate that the subscriber of

PHONE NUMBER 1 from December 7, 2022 to October 5, 2023 was the TARGET. The listed

address was the TARGET'S RESIDENCE.

31.     On November 15, 2023, Ionos Inc., which is the provider of email addresses with

the @mail.com domain name, provided records indicating that EMAIL ADDRESS 1 was

registered on May 3, 2023 from IP ADDRESS 1. The records indicate the account is registered to

"Just Lewking" with the date of birth that is one day before the TARGET's true date of birth.

<u>Review of MV's Snapchat Account</u>

32.     On December 12, 2023, an SPD member, in my presence, logged into MV's

Snapchat using an undercover agency phone, and I used a screen recording software to record the

contents of MV's Snapchat account including conversations between MV and the TARGET's

"yuppme2020" Snapchat account. Below are some of the conversations I observed in MV's Snapchat account:

a.      On April 19, 2023, MV sent six videos to the "yuppme2020" account.

     i.  The second video is approximately three seconds long and depicts MV laying on his back with his legs in the air.  MV's genitals and anus are exposed, and MV is inserting a dildo into his anus.

     ii.  The fourth video is approximately eleven seconds long and shows MV naked squatting on a bathroom floor while inserting a dildo into his anus.

     iii.  The fifth video depicts MV performing oral sex on a Caucasian male. Following the sixth video is the notation "Rick Saved A Snap In Chat!"

b.      Also on April 19, 2023, the "yuppme2020" account sent a selfie picture to MV.  I positively identified the picture of the male as the TARGET based on a Connecticut state driver's license photograph that HSI obtained of the TARGET.

c.      On April 29, 2023, at approximately 11:35 am, the "yuppme2020" account sent a video of the TARGET and MV together.  The video is approximately six seconds long.  The TARGET is standing behind MV and choking MV.  The TARGET has his right hand on MV's neck and is smiling at the camera. MV is not wearing a shirt.

d.      On April 29, 203, at approximately 2:07pm, the "yuppme2020" account sent MV three videos.

     i.  One of the videos is approximately thirty-nine seconds long and depicts MV performing oral sex on the TARGET.  At approximately twenty-nine seconds in the video, MV kisses the TARGET.  The TARGET is the individual recording the video.

ii. The second video is approximately twelve seconds long and depicts MV laying naked on his back on a bed.  MV is having anal intercourse with a Caucasian adult male that appears to be the TARGET.  I cannot see the identity of the male's face in the video, but the body weight and type are similar to the TARGET from the previously described video.  The adult male is recording the video.

e. On May 3, 2023, the "yuppme2020" account sent MV a selfie picture, which is of the TARGET.  The photo is edited with the message "You're like my PERFECT match" and "Thank god ur 16."

f. On May 4, 2023, at approximately 1:54pm, MV sent the "yuppme2020" account a picture of MV standing in front of a mirror. MV has his pants pulled down just below his genitals and is exposing his genitals.  Under the picture there is a notation "RICK SAVED A SNAP IN CHAT!"

g. On May 4, 2024, at approximately 4:43, MV sent the "yuppme2020" account a picture of MV standing in front of a mirror.  MV has his pants down around his thighs and is exposing his genitals.  Under the picture there is a notation "RICK SAVED A SNAP IN CHAT!"

h. On May 7, 2023, at approximately 11:57am, MV sent the "yuppme2020" account a picture of MV and the TARGET kissing on the lips.  Under the picture there is a notation "RICK SAVED A SNAP IN CHAT!"

i. On May 7, 2023, between approximately 3:37pm and 4:05pm, MV sent the "yuppme2020" account three pictures of MV and MV's younger sibling swimming in a pool. Under the picture there is a notation "RICK SAVED A SNAP IN CHAT!"

j.      On May 14, 2023, at approximately 11:36am, MV sent the "yuppme2020" account three pictures of MV's younger sibling.  One of the pictures depicts MV's younger sibling sitting down wearing shorts with no shirt on.  No nudity is depicted in any of the pictures.  Under all the pictures there is a notation "RICK SAVED A SNAP IN CHAT!"

k.      On May 23, 2023, at approximately 3:27pm, the "yuppme2020" account sent MV a selfie picture. The picture has the following words edited into it: "I know you desire companionship and I'm sorry things haven't quite clicked yet" and "Ur amazing."

l.      The last documented Snapchat conversation happens on September 11, 2023, at approximately 1:05pm when MV sent a selfie picture of himself to the "yuppme2020" account.

## Summary

33.     Based on the foregoing, I believe there is probable cause that the TARGET used the TARGET'S PHONE to communicate with MV and to access Mega, which as discussed above, the MV indicated he used to send child pornography to the TARGET. I also believe there is probable cause that the TARGET used the TARGET's PHONE -to receive and possess child pornography that depicted MV and to send child pornography depicting the TARGET and MV engaged in sexually explicit conduct, including videos that the TARGET recorded and sent to MV.

34.     As noted above, MV was 16 years old at the time of the offense. Also as noted above, the state search warrant authorized the seizure of items for evidence of the state crime of possession of child pornography, which under state law, is defined as visual depictions of someone less than 16 years old engaged in sexually explicit conduct and would not include MV.

35.     As such, I seek this warrant to search the CELL PHONE EXTRACTIONS for evidence of federal child pornography offenses, specifically the TARGET OFFENSES, which defines child pornography as visual depictions of someone less than 18 years old engaged in sexually explicit conduct. This would include child pornography depicting MV.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36.     Based on my knowledge, training, and experience, I know that electronic devices, such as the TARGET'S PHONE, can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

37.     There is probable cause to believe that things that were once stored on the TARGET'S PHONE may still be stored there, for at least the following reasons:

        a.      Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

        b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

38.      As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET'S PHONE was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the devices because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.   Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.   Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the

times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

      b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

      f.     I know that when an individual uses an electronic device to receive, possess, and/or view child pornography, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of

crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

39.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying the CELL PHONE EXTRACTIONS or the contents therein.  Consistent with Rule 41(e)(2)(B), it is also requested that the warrant be deemed executed once the CELL PHONE EXTRACTIONS have been physically seized, imaged, or otherwise copied, and that review of the contents of the CELL PHONE EXTRACTIONS is permitted at a later time.

## CONCLUSION

40.     Based on the aforementioned factual information, I respectfully submit there is probable cause to believe, and I do believe, that the CELL PHONE EXTRACTIONS constitute and contain items that constitute instrumentalities, fruits, and evidence of the TARGET OFFENSES. In consideration of the foregoing, I respectfully request that this Court issue an order authorizing the search and seizure of the CELL PHONE EXTRACTIONS on DRIVE-1 and DRIVE-2, as described in Attachments A-1 and A-2, and the contents contained therein, for the items, materials and records more specifically identified in Attachment B.

41.     Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto

a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution

of the warrant at any time in the day or night.

MICHAEL A
MANGANIELLO
Digitally signed by MICHAEL A MANGANIELLO
Date: 2024.01.08 08:50:41 -05'00'

_____

Special Agent Michael Manganiello
Homeland Security Investigations


The truth of the foregoing affidavit has been attested to me by Special Agent Michael Manganiello
over the telephone on this 8th day of January, 2024, at New Haven, Connecticut in accordance
with the requirements of Fed. R. Crim. P. 4.1.

Robert M.
Spector
Digitally signed by Robert M. Spector
Date: 2024.01.08 10:10:47 -05'00'

_____

HON. ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A-1</u>

**Property to Be Searched**

The property to be searched are copies of the Magnet Axion Portable Case, Cellebrite Universal Forensic Extraction Device Report, and Cellebrite PDF report, containing data extracted from a Samsung Galaxy S22 Ultra phone bearing serial number R5CT40T9YVX, which are located on one gray WD My Passport 2TB SSD External Drive, bearing serial number 22321N401025, that is presently in the custody of Homeland Security Investigations in New Haven, Connecticut.

## **ATTACHMENT A-2**

### **Property to Be Searched**

The property to be searched is a copy of a Graykey extraction of the data from a Samsung Galaxy S22 Ultra phone bearing serial number R5CT40T9YVX, which is located on one gray WD My Passport 2TB SSD External Drive, bearing serial number 22321N401370, that is presently in the custody of Homeland Security Investigations in New Haven, Connecticut.

# ATTACHMENT B

## Particular Things to be Seized

All records and information that constitute evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. §§ 2251(a) (production of child pornography), 2252A(a)(2) (receipt and distribution of child pornography), 2252A(a)(5)(B) (possessing and accessing with intent to view child pornography), and 2422(b) (online enticement of a minor to engage in illegal sexual activity) (collectively, the "TARGET OFFENSES") for the time period from April 19, 2023 through October 2, 2023, including, but not limited to, the following:

1. All photographs, images, and videos, in any format, including any associated metadata or EXIF information, depicting child pornography, as defined in 18 U.S.C. § 2256;

2. Communications, in any format, pertaining to the TARGET OFFENSES;

3. Logs and notes, in any format, pertaining to the TARGET OFFENSES;

4. Photographs or videos of any minors who may have been contacted in connection with the TARGET OFFENSES.

5. Names, addresses, contact information or lists of names, addresses or contact information, in any format, of those who may have been contacted in connection with the TARGET OFFENSES.

6. Software, including programs to run operating systems, applications, utilities, compilers, interpreters, and communications programs, including, but not limited to, camera software, software to record, playback, or display pictures, images, videos, movies, and communication and file transfer applications;

7. Records and information relating to the access or use of any websites, social media, or computer applications, including Sniffies.com, Mega, and Snapchat, to commit the TARGET OFFENSES;

8. Records of Internet activity, including logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses related to the TARGET OFFENSES;

9. Records of Internet Protocol addresses used;

10. Evidence of who used, accessed, owned, or controlled the Samsung Galaxy S22 Ultra phone bearing serial number R5CT40T9YVX (the "TARGET'S PHONE").

11. Evidence of software that would allow others to control the TARGET'S PHONE, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the

presence or absence of security software designed to detect malicious software;

12.     Evidence of the lack of such malicious software;

13.     Evidence indicating how and when the TARGET'S PHONE was accessed or used,

14.     Evidence indicating the geographic location of the TARGET'S PHONE when it was accessed or used to commit the TARGET OFFENSES;

15.     Evidence indicating the state of mind of the TARGET'S PHONE user as it relates to the TARGET OFFENSES;

16.     Evidence of the attachment to the TARGET'S PHONE of other devices or similar containers for electronic evidence;

17.     Evidence of counter-forensic programs; and

18.     Passwords and encryption keys, and other access information that may be necessary to access the TARGET'S PHONE.


As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Pursuant to Rule 41(e)(2)(B), it is authorized that electronically stored information may be imaged or copied. Consistent with Rule 41(e)(2)(B), the warrant is deemed executed once the property identified in Attachment A-1 or A-2 has been physically seized, imaged, or copied, and that review of the contents of those items is permitted at a later time.